UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRACIE M. HUNTER,
    Plaintiff,

vs.

HAMILTON COUNTY BOARD OF
COMMISIONERS, OHIO, *et al.*,
    Defendants.

Case No. 1:21-cv-544
Black, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Pro se plaintiff Tracie M. Hunter filed a civil rights action pursuant to 42 U.S.C. § 1983 against the Hamilton County Board of Commissioners (Board) in their official capacities, the Hamilton County Sheriff's Office (HCSO), and John and Jane Doe HSCO sheriff's deputies and Hamilton County Justice Center (HCJC) corrections officers in connection with her July 22, 2019 sentencing hearing and the jail sentence that followed. Plaintiff filed the action in the Court of Common Pleas of Hamilton County, Ohio (Doc. 2), and the Board removed it to this Court. (Doc 1). This matter is before the Court on the Board's motion to dismiss. (Doc. 5). Plaintiff filed a response (Doc. 13), to which the Board replied (Doc. 14).

**I.    Background**

Plaintiff alleges that after she was sentenced on July 22, 2019, HSCO sheriff's deputies used excessive force in escorting her from the Hamilton County Courthouse courtroom. Plaintiff also alleges that the conditions of her subsequent confinement were unconstitutional—alleging, among other things, that she was subjected to sexual harassment and intimidation and denied exercise, personal hygiene products, and adequate medical care. Regarding the Board,[1] plaintiff

---

[1] Throughout her complaint, plaintiff refers to "Hamilton County" or "Defendants" generally as opposed to the Board specifically. (*See id.*).

alleges that "Defendant Hamilton County possessed the power and authority to adopt policies and procedures[] [and] prescribe rules, regulations and practices" pertaining to or governing the HCSO. (*See* Doc. 2, PAGEID 45 at ¶ 7). Plaintiff also alleges that Hamilton County policies, practices, and customs, as well as its failure to train or supervise HCSO sheriff's deputies or HCJC personnel, resulted in her constitutional injuries. (*See id.* at PAGEID 45 and 57-62).

## II.     Standard of Review

The Board seeks to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a

2

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

Ordinarily, complaints filed by pro se litigants are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Plaintiff, however, "has been educated as an attorney, and was practicing as an attorney and judge not long before she filed this case. Therefore, [p]laintiff is not entitled to the leniency generally afforded to pro se litigants." *Hunter v. Hamilton Cnty.*, No. 1:15-cv-540, 2016 WL 4836810, at *4 n.2 (S.D. Ohio Sept. 15, 2016) (citing *Johansen v. Presley*, 977 F. Supp. 2d 871, 876 (W.D. Tenn. 2013)).

**III. Applicable Law**

Title 42 U.S.C. § 1983 prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving a United States citizen "of any rights, privileges, or immunities secured by the constitution and laws." To prevail on a § 1983 claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

Plaintiff's official-capacity claims against the Board are, in effect, claims against Hamilton County. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). In *Monell v. Dep't*

*of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), the Supreme Court held that a government entity may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent an official policy, inflicts the injury. . . ." *Id.* at 694. For a successful *Monell* claim, plaintiff must demonstrate "(1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia Cnty.*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). A municipality may be held liable where it was the "moving force" behind the alleged constitutional deprivation but not where it had "the mere right to control without any control or direction having been exercised and without any failure to supervise. . . ." *Monell*, 436 U.S. at 694 & n.58 (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). *See also Ridgeway v. Union Cnty. Comm'rs*, 775 F. Supp. 1105, 1110 (S.D. Ohio 1991) (Smith, J.) ("[T]he liability of supervisory personnel and government entities must be based on more than merely the right to control.").

A plaintiff may establish an entity's liability under § 1983 by making one of the following demonstrations: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Osberry v. Slusher*, 750 F. App'x 385, 397 (6th Cir. 2018) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Officials vested with final policymaking authority for an entity may, in some circumstances, subject the entity to liability under § 1983. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)). Whether an official is a final

4

policymaker for the purposes of § 1983 is a question of state law. *Id.*

IV.     Analysis

The Board argues that it should be dismissed from this lawsuit because it does not control or supervise the HCSO or HCJC under Ohio law beyond its obligation to provide funding. The Board reasons that it is the Hamilton County Sheriff who is solely responsible under Ohio law for acting as the chief law enforcement officer (Ohio Rev. Code § 311.07), appointing and employing sheriff's deputies (*id.* at § 311.04), and operating the HCJC (*id.* at § 341.01)—the powers that give rise to the alleged constitutional violations in this lawsuit. In response, plaintiff argues that the Board is a proper party because suing the Board is the only way to sue Hamilton County. As such, plaintiff argues that the Board should not be dismissed before she has the opportunity to flesh out her *Monell* claims through discovery. In reply, the Board distinguishes the authority raised by plaintiff and reiterates that, even if the Board had control over the HCSO or HCJC policies (or lack thereof) at issue, plaintiff has failed to allege that it actually exerted such control.

In *Monell*, the Supreme Court rejected a *respondeat superior* theory of liability in the § 1983 context and held that an entity's liability is contingent on a plaintiff showing that the entity's policy or custom actually inflicted the alleged constitutional injury. 436 U.S. at 694. An entity's right to control a party that inflicted injury is not sufficient; a plaintiff must allege that the entity itself actually exercised control or supervision in order to establish an entity's liability. *See id.* at 694 & n.58 (citing *Rizzo*, 423 U.S. at 370-71); *Ridgeway*, 775 F. Supp. at 1110. Identifying the relevant policymaker for purposes of an entity's liability under § 1983 is a question of state law. *Praprotnik*, 485 U.S. at 123 (citing *Pembaur*, 475 U.S. at 483).

Chapters 305 and 307 of the Ohio Revised Code set forth the power and authority of the Board. *See Loggins v. Franklin Cnty., Ohio*, 218 F. App'x 466, 474 (6th Cir. 2007) ("The Board possesses a limited set of powers and duties dictated by statute. OHIO REV. CODE ANN. §§ 305.01, 307.01."); *Argabrite v. Miami Twp. Bd. of Trs.*, No. 3:12-cv-229, 2012 WL 4511620, at *2 (S.D. Ohio Oct. 2, 2012) (Black, J.) ("[T]he office of the board of county commissioners of any county in Ohio is created by virtue of the authority contained in Chapters 305 and 307 of the Ohio Revised Code."). Under Ohio law, the Board's power and authority is strictly construed. *Slough v. Telb*, 644 F. Supp. 2d 978, 999 (N.D. Ohio 2009) (citing *Comm'rs v. Andrews*, 18 Ohio St. 49 (1868); *Treadwell v. Comm'rs*, 11 Ohio St. 183 (1860)). *See also Bowie v. Hamilton Cnty. Juv. Ct.*, 2019 WL 144340, at * 2 (S.D. Ohio Jan. 9, 2019) (Bowman, M.J.) ("[C]ounty officials and entities do not have any authority unless the Ohio General Assembly affirmatively grants it.") (quoting *Geauga Cnty. Bd. of Comm'rs v. Munn Rd. Sand & Gravel*, 621 N.E.2d 696, 699 (Ohio 1993)), *report and recommendation adopted as to this proposition*, 2019 WL 1305864 (S.D. Ohio Mar. 22, 2019) (Barrett, J.); *State ex rel. Shriver v. Bd. of Comm'rs of Belmont Cnty.*, 74 N.E.2d 248, 250 (Ohio 1947) ("A . . . board of county commissioners . . . has only such power and jurisdiction as are expressly conferred by statutory provision.") (quoting *Elder v. Smith, Aud.*, 133 N.E. 791, 792 (Ohio 1921)). Chapter 311 establishes the powers and duties of duly elected county sheriffs, and Chapter 341 governs county jails, over which the county sheriff "ha[s] charge. . . ." Ohio Rev. Code. § 341.01.

Case law from and within the Sixth Circuit overwhelmingly supports the conclusion that Ohio law does not grant the Board power or authority over the HSCO or HCJC—in particular, the powers to set policy governing the operation of the HSCO/HCJC or the training of their personnel that are implicated by plaintiff's allegations. *See Loggins*, 218 F. App'x at 474 ("By

6

statute, the Sheriff is responsible for the day-to-day operations of the jail and as part of that responsibility the Sheriff promulgates rules for the jail."); *Armstead v. Baldwin*, No. 2:19-cv-4857, 2019 WL 6887639, at *2 (S.D. Ohio Dec. 18, 2019) (Jolson, M.J.) (denying motion to amend to add Franklin County Commissioners as futile in a prisoner's lawsuit because the sheriff and not the county commissioners had control over county jail operations), *report and recommendation adopted*, 2020 WL 613934 (S.D. Ohio Feb. 10, 2020) (Morrison, J.); *Argabrite*, 2012 WL 4511620, at *2 (dismissing Montgomery County Board of Commissioners from a § 1983 suit regarding a high speed chase because "the actions of the county sheriff's office are not subject to review by the board of county commissioners") (citation omitted); *Wright v. Cnty. of Franklin, Ohio*, No. 2:10-cv-715, 2011 WL 3667397, at *5 (S.D. Ohio Aug. 22, 2011) (Frost, J.) (granting motion for judgment on the pleadings and holding that "[t]he Board of Commissioners have no duty to control the sheriff in keeping a jail safe, and the fact that Ohio Revised Code § 307.01(A) designates the Board of Commissioners as the agency to determine the necessity of jail construction does not mean that such board has any control over the operation of a county jail.") (citation omitted); *Stack v. Karnes*, 750 F. Supp. 2d 892, 900 (S.D. Ohio 2010) (Frost J.) ("This Court has previously held that dismissal was appropriate on a § 1983 claim against the Franklin County Commissioners because it is not the entity in charge of the jail."); *Newman v. Telb*, No. 3:08-cv-711, 2010 WL 3666593 at *4 (N.D. Ohio Sept. 16, 2010) (dismissing claims against Lucas County Commissioners in their official capacities as a matter of law because, "[u]nder Ohio law, the county commissioners have discretion to finance correctional facilities but they have no duty to control the sheriff in keeping a jail safe") (citing Ohio Rev. Code § 307.01 *et seq.*) (remaining citation omitted); *Koch v. Cnty. of Franklin, Ohio*, No. 2:08-cv-1127, 2010 WL 2386352, at *9-10 (S.D. Ohio June 10, 2010) (Frost, J.) (same); *Doyle v. Pollitt*, No.

2:08-cv-761, 2010 WL 2105449, at *3 (S.D. Ohio May 25, 2010) (Deavers, M.J.) (recommending dismissal as to the board of commissioners because "[u]nder Ohio statutory law, the Sheriff, and not the Board, is responsible for the daily operation of the jail") (citing Ohio Rev. Code § 341.01), *report and recommendation adopted*, 2010 WL 3275999 (S.D. Ohio Aug. 18, 2010) (Marbley, J.); *Tarpley v. Jefferson Cnty. Comm'rs*, No. 2:09-cv-199, 2010 WL 1257607, at *2 (S.D. Ohio Jan. 13, 2010) (Abel, M.J.) ("[T]he Jefferson County Commissioners could not be the moving force behind the deprivation or institute a policy or custom in the operation of the jail which resulted in the violation of federal law. Because the Jefferson County Commissioners do not have authority over the county jail, the complaint fails to a state a claim against them.") (citing Ohio Rev. Code § 341.01), *report and recommendation adopted*, 2010 WL 1253546 (S.D. Ohio Mar. 30, 2010) (Sargus, J.); *Brown v. Voorhies*, No. 2:07-cv-13, 2008 WL 2397692, at *2 (S.D. Ohio June 10, 2008) (Kemp, M.J.) (citing Ohio Rev. Code § 341.01) ("Mr. Brown's attempt to impose liability on the Franklin County Commissioners for alleged injuries he suffered while confined at FCCC likewise fails to state a claim upon which relief may be granted. Under Ohio law, the sheriff is in charge of the county jail and all persons confined therein."), *report and recommendation adopted*, 2008 WL 3993893 (S.D. Ohio Aug. 21, 2008) (Frost, J.); *Schneider v. Franklin Cnty.*, Ohio, No. 2:04-cv-1218, 2007 WL 9728908, at *5 (S.D. Ohio Apr. 12, 2007) ("[Sections 305 and 307] do not include the daily operations of the Sheriff's Office. . . . [T]he [county sheriff] is vested with the responsibilities of running the county jail, hiring deputy sheriffs, promulgating policies pertaining to deputy sheriffs, offering personnel training, and the provision of medical services.") *aff'd in part and rev'd in part for reasons not related to this proposition*, 288 F. App'x 247 (6th Cir. 2008); *Orr v. Trumbull Cnty.*, 77 F. Supp. 2d 853, 857 (N.D. Ohio 1999) ("The relevant State law establishes that the county sheriff is the

8

final policy-making authority with respect to county jail operations. [The county sheriff] has jurisdiction over the county's jail facility.") (citing Ohio Rev. Code § 307.021(A))[2]; and *Ridgeway*, 775 F. Supp. at 1109-10 (holding that plaintiffs "failed to state a federal claim against which relief can be granted" as to Union County Commissioners because their power to fund the Union County Sheriff's Department was insufficient to establish *Monell* liability for constitutional violations allegedly caused by that department). *Cf. Hoskins v. Hamilton Cnty. Juv. Ct.*, No. 1:18-cv-305, 2018 WL 5316788, at *1 (S.D. Ohio Oct. 25, 2018) (Litkovitz, J.) (recommending dismissal of official-capacity claim against the Board where, under the statutory scheme, "the Board ha[d] the authority to appropriate funds for the Juvenile Court Detention Center but no authority over the facility's hiring decisions, executive management decisions, or daily operations"), *report and recommendation adopted*, 2018 WL 6308822 (S.D. Ohio Dec. 3, 2018) (Barrett, J.); *Winston*, 2011 WL 2601562, at *3 (S.D. Ohio June 30, 2011) (Marbley, J.) (Franklin County Board of Commissioners dismissed from lawsuit alleging unconstitutional conditions in juvenile detention center pursuant to Rule 12(b)(6) where the board provided funding to the juvenile detention center but otherwise "lack[ed] the statutory authority to create policies related to the safety and protection of detainees").[3]

Resisting this conclusion, at least as it pertains to the alleged use of excessive force at her sentencing hearing at the Hamilton County courthouse, plaintiff points to Ohio Revised Code § 311.07(A), which states: "*Under the direction and control of the board of county commissioners*, such sheriff shall have charge of the *court house*." *Id.* (emphasis added). Beyond this general

---

[2] The *Orr* court did not discuss the county's board of commissioners and acknowledged that the official-capacity lawsuit against the sheriff was effectively a lawsuit against the county. *Id.* at 856.
[3] One District Judge for the Southern District of Ohio has held in several cases that a county's board of commissioners is a proper party to a § 1983 conditions-of-confinement lawsuit. *See, e.g., Replogle v. Montgomery Cnty., Ohio*, No. 3:09-cv-102, 2009 WL 1636506 (S.D. Ohio June 10, 2009). Given the weight of authority referenced above, however, the Court does not find the reasoning in *Replogle* persuasive.

language, however, plaintiff does not point to an explicit grant of statutory power that the Board exercised (or failed to exercise) with respect to her sentencing hearing that would trump the explicit grants of authority to the county sheriff under the Ohio Revised Code discussed above. *See State ex rel. Shriver*, 74 N.E.2d at 250 ("A . . . board of county commissioners . . . has only such power and jurisdiction as are *expressly conferred* by statutory provision.") (emphasis added) (quoting *Elder*, 133 N.E. at 792). *See also Slough*, 644 F. Supp. 2d at 999 ("[A] board of county commissioners has no liability for the actions of [sheriff's department] employees *absent a showing that the board assumed supervisory or policymaking control over the sheriff's department in violation of statute*."); *Schneider*, 2007 WL 9728908, at *5 ("[The Board's] powers and duties do not include the daily operations of the Sheriff's Office. Instead, . . . the duly elected sheriff for the county is vested with the responsibilities of . . . *promulgating policies pertaining to deputy sheriffs[] [and] offering personnel training*. . . ."). In addition, though the precise issue at bar was not before it, the Sixth Circuit in *Loggins* indicated that "[t]he Board's role in the judicial system is limited to a duty to provide a courthouse"—suggesting that it would be unlikely to view the general reference to the Board in Ohio Revised Code § 311.07 as superseding the specific grants of authority to the county sheriff related to her office and deputies located elsewhere in the Ohio Revised Code. 218 F. App'x at 475.

Aside from her reference to Ohio Revised Code § 311.07, plaintiff does not challenge the authority demonstrating that the county sheriff is charged with setting policy for the HCSO and HCJC under state law. Rather, plaintiff's response focuses on whether other authority dictates that the Board is nevertheless a proper and/or necessary party at this early stage of the litigation. As discussed below, the cases referenced by plaintiff do not compel this conclusion, as they either consider county liability generally as opposed to the liability of a board of commissioners

10

specifically (*see Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985); *Petty v. Cnty. of Franklin*, 478 F.3d 341(6th Cir. 2007), *overruled on other grounds by Twombly*, 550 U.S. at 561-62; *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003); and *Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989)), or are otherwise distinguishable (*see McGuire v. Ameritech Servs., Inc.*, 253 F. Supp. 2d 988 (S.D. Ohio 2003); *Lowe v. Hamilton Cnty. Dep't of Job and Fam. Servs.*, No. 1:05-cv-117, 2008 WL 816669, at *2 (S.D. Ohio Mar. 26, 2008); and *Black v. Hamilton Cnty. Pub. Def. Comm'n*, No. 1:12-cv-503, 2013 WL 684394 (S.D. Ohio Feb. 25, 2013) (Litkovitz, J.), *report and recommendation adopted*, 2013 WL 1155253 (Mar. 19, 2013) (Dlott, J.)).

In *Marchese*, the Sixth Circuit upheld a verdict against Wayne County, Michigan's Board of Supervisors on a § 1983 claim, where the incarcerated plaintiff had been beaten while held in sheriff custody with apparent toleration by hostile sheriff's officers. 758 F.2d at 182-84, 188-89. The district court had found that the sheriff's department's failure to investigate the incident and punish the perpetrator amounted to "an unstated 'policy' of toleration of illegal brutality. . . ." *Id.* at 184. The Sixth Circuit held that Wayne County, for whom the sheriff was the law enforcement officer, was liable for the plaintiff's injuries because "the relationship between the County and the Sheriff's Department [wa]s so close as to make the *County* liable for the Sheriff's failure to train and discipline his officers. . . ." *Id.* at 189 (emphasis added). The Sixth Circuit reached this conclusion because the Wayne County Sheriff was "the law enforcement arm of the County[,]" even though "Wayne County did not make policy for the Sheriff's Department" under Michigan's constitution. *Id.* at 188-89. The Sixth Circuit did not address, however, whether the county board of commissioners (as opposed to the county) was a necessary or proper defendant.[4]

---

[4] The Board cites *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 495 (6th Cir. 2020) in support of their argument that more recent Sixth Circuit authority emphasizes the requirement of an actual causal link between an entity's policy and the constitutional injury to establish entity liability under § 1983. In *Pineda*, the Sixth Circuit signaled that the "decades"-old cases of *Marchese* and *Leach* (discussed *infra*), did not account for clarifications of the scope

11

In *Petty*, the Sixth Circuit seemed to doubt that the district court had properly dismissed a plaintiff's § 1983 action against Franklin County for unconstitutional conditions during his county correctional confinement at the complaint stage—reasoning that the plaintiff would not then (i.e., prior to discovery) have known whether an unconstitutional Franklin County policy or custom existed. 478 F.3d at 347-48. The plaintiff in *Petty*, however, had filed his entity-liability claims against the county sheriff, the county sheriff's department, and the county entity itself *but not* the county's board of commissioners. *Id.* at 343-44. *See also Stack*, 750 F. Supp. 2d at 899-900 (relying on *Petty* to deny the defendants' motion to dismiss as to Franklin County itself but granting it as to the county's board of commissioners).

In *Alkire*, the Sixth Circuit considered a § 1983 action against Holmes County and the county's sheriff, judge, and court. 330 F.3d at 806. The Sixth Circuit reversed in part the dismissal of the plaintiff's lawsuit for constitutional rights deprivations allegedly inflicted during his detention and incarceration. *Id.* at 806-07. Like in *Petty*, the court in *Alkire* held that the county could be held liable under § 1983. *Id.* at 810 ("Holmes County, as the government entity that employed Sheriff Zimmerly, and the Holmes County Court, as the government entity that employed Judge Irving, are the only true defendants in this case. . . ."). Also like in *Petty*, the *Alkire* plaintiff had not sued the county board of commissioners, and the *Alkire* court did not comment on whether a county board of commissioners is a necessary defendant in a § 1983 action against an Ohio county. *Id.*

In *Leach*, a Sixth Circuit case originating in Tennessee, the plaintiff had named the county mayor and county sheriff in their official capacities but not the county's board of commissioners, and the court concluded that the plaintiff's suit against these parties "in their

---

of the "ratification theory" of liability at issue in those cases (i.e., county sheriff could be held liable for ratifying the unconstitutional acts of his subordinates). *Id.* at 495.

12

official capacities [wa]s . . . , essentially and for all purposes, a suit against the County itself." 891 F.2d at 1245. The court affirmed a lower court decision holding the county sheriff liable in his official capacity for creating a policy of deliberate indifference to the needs of paraplegic prisoners. *Id.* at 1250. The opinion does not discuss the role of a county's board of commissioners.

In *McGuire*, the Court dismissed claims regarding jail operations against both individual counties and county sheriffs in their official capacities, holding that county boards of commissioners were the only proper parties to the lawsuit. 253 F. Supp. 2d at 1015. Since *McGuire*, however, the Sixth Circuit held in *Petty* that "the sheriff himself may be considered a proper legal entity for purposes of suit under § 1983." 478 F.3d at 347. Also, in *Replogle*, decided after *McGuire* by the same District Judge, the Court noted: "If Plaintiff can establish that some unconstitutional policy of Sheriff Vore or Sheriff Plummer caused him injury, he can recover against the entity those gentlemen represent." 2009 WL 1636506, at *1.[5] *See also Wicker v. Lawless*, 278 F. Supp. 3d 989, 1010 (S.D. Ohio Sept. 30, 2017) (Barrett, J.) (in a lawsuit in which the county board of commissioners was not a party, a § 1983 claim against county sheriff in his official capacity was the "equivalent of a . . . claim against" the county).

Plaintiff cites *Lowe* for the proposition that counties are held accountable through their commissioners as elected representatives. 2008 WL 816669, at *2 (citing *McGuire,* 253 F. Supp. 2d at 1015). The Board argues that *Lowe* concerned the policies of the Hamilton County Department of Job and Family Services (HCDJFS), over which Ohio law gives the Board control. *See* Ohio Rev. Code § 329.02 ("*Under the control and direction of the board of county*

---

[5] The Court in *Replogle* noted that "neither [county sheriff] sought dismissal in the instant Motion. Even if the Report and Recommendations were adopted as filed, that would not affect the suit against these two parties in their official capacities." *Id.*

13

*commissioners*, the county director of job and family services shall have full charge of the county department of job and family services.") (emphasis added). Because Ohio law does not give the Board control over the HCSO and HCJC with respect to the conditions of plaintiff's confinement, the Board argues that *Lowe* is not precisely on point. Although not raised by the Board, the Court finds that the more compelling distinction between the case at bar and *Lowe* is that the Court in *Lowe* assumed that Hamilton County could only be sued through the Board based on *McGuire*.[6] Moreover, the lawsuit in *Lowe* concerned employment discrimination, giving the Court no occasion to discuss the county arm with power over the HCSO or HCJC operations/training/etc. at issue here.

Plaintiff also argues against dismissal of the Board at this early stage in the proceedings based on this Court's Report and Recommendation in *Black*. In *Black*, the plaintiff sued the Board in connection with her termination from a division of the Hamilton County Public Defender (HCPD). 2013 WL 684394, at *1. Although the Board did not have direct control over the HCPD under Ohio's statutory scheme, the Court nevertheless concluded that the Board could plausibly be considered the plaintiff's employer at the pleading stage because of a "sufficient economic link" between Hamilton County and the plaintiff. *Id.* at *5-6.

The Court does not find *Black* to be on point. First, the undersigned specifically acknowledged that the *Black* Report and Recommendation turned in part on the fact that the defendants had "not addressed whether plaintiff has adequately pled the existence of a county custom or policy that led to the deprivation of her constitutional rights." *Id.* at *4. Here, the Board has argued that general allegations that it "control[ed] or supervise[d] the operations of the sheriff's office" are incorrect as a matter of law and, in any event, insufficient to establish *Monell*

---

[6] Although the Court in *Lowe* held that the plaintiff had named an improper defendant (HCDJFS, which was not *sui juris*), it granted the plaintiff leave to amend her complaint to add Hamilton County and the Board as defendants.

14

liability. (*See* Doc. 5 at PAGEID 76 (citing *Ridgeway*, 775 F. Supp. at 1110)). Second, the Report and Recommendation in *Black* turned in part on the type of lawsuit at bar (employment, like in *Lowe*). The undersigned distinguished two cases (*Spangler v. Wenninger*, No. 1:06-cv-229, 2008 WL 4186318 (S.D. Ohio Sept. 3, 2008) (Barrett, J.), and *Burton v. Hamilton Cnty. Juv. Ct.*, No. 1:04-cv-368, 2006 WL 91600 (S.D. Ohio Jan. 11, 2006) (Spiegel, J.)), in which county boards of commissioners were found *not* to be proper parties—both of which more closely reflect the facts at bar—from two other cases concerning the Family and Medical Leave Act that were more similar to the facts in *Black*. *Id.* at *5-6.

In *Spangler*, the plaintiffs alleged that they suffered an unreasonable seizure and the destruction of their property. 2008 WL 4186318, at *1-4. The Court held: "Because there is no evidence that either the Clermont or Brown County Commissioners had any involvement in the search *other than the right to control their respective sheriff's departments*, these Defendants are entitled to summary judgment." *Id.* at *9 (emphasis added). Instead, the Court in *Spangler* only considered the substance of the official capacity claims against the counties' sheriffs. *Id.* In *Burton*, the lawsuit concerned the Title VII discrimination claims of a former Hamilton County Juvenile Court employee. 2006 WL 91600, at *1. The Court concluded that the Board was not a proper defendant because Ohio law provided sole authority to the juvenile court judge regarding juvenile court employees, and there was no evidence otherwise showing that the Board "was responsible for or participated in" the plaintiff's termination. *Id.* at *4.

Based on the foregoing, the Court concludes that the Board is not a proper defendant. Under Ohio law, the county sheriff has authority over her deputies, jail conditions, and jail operations. *See Loggins*, 218 F. App'x at 474 ("By statute, the Sheriff is responsible for the day-to-day operations of the jail and as part of that responsibility the Sheriff promulgates rules for the

15

jail."); *Schneider*, 2007 WL 9728908, at *5 ("[The Board's] powers and duties do not include the daily operations of the Sheriff's Office. Instead, . . . the duly elected sheriff for the county is vested with the responsibilities of . . . promulgating policies pertaining to deputy sheriffs[] [and] offering personnel training. . . ."). Even the District Judge that has consistently found that boards of county commissioners are proper parties to suits such as this has acknowledged that "Ohio Revised Code § 307.021 provides that the county sheriff has charge over the county jail and is responsible for its operation." *Grant*, 2021 WL 1192568, at *4.

      **IT IS THEREFORE RECOMMENDED THAT** the Board's motion to dismiss (Doc. 5) be **GRANTED**.

Date: 6/15/2022

Karen L. Litkovitz
Chief United States Magistrate

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRACIE M. HUNTER,
    Plaintiff,

vs.

HAMILTON COUNTY BOARD OF
COMMISSIONERS, OHIO, *et al.*,
    Defendants.

Case No. 1:21-cv-544
Black, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned district judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).