UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRACIE M. HUNTER,
    Plaintiff,

vs.

HAMILTON COUNTY BOARD OF
COMMISIONERS, *et al.*,
    Defendants.

Case No. 1:21-cv-544
Hopkins, J.
Litkovitz, M.J.

ORDER

Pro se plaintiff Tracie M. Hunter filed a civil rights action pursuant to 42 U.S.C. § 1983 against the Hamilton County Board of Commissioners (Board) and others in connection with her July 22, 2019 sentencing hearing and the jail sentence that followed. Plaintiff filed the action in the Court of Common Pleas of Hamilton County, Ohio (Doc. 2), and the Board removed it to this Court. (Doc 1). On June 15, 2022, the undersigned issued a Report and Recommendation that the District Judge grant the Board's motion to dismiss (Doc. 5), which remains pending. (Doc. 17).

This matter is before the Court on plaintiff's subsequent motion to disqualify[1] the Board's law firm, Montgomery Jonson LLP. (Doc. 25). Relatedly, plaintiff has moved to extend the deadline to file objections to the Report and Recommendation (Doc. 17) until her disqualification motion is resolved.[2] (Doc. 26). The Board filed a combined response. (Doc. 27).[3]

---

[1] "District Courts within this Circuit hold that motions to disqualify counsel are non-dispositive motions." *McClain v. Wysong*, No. 3:21-cv-80, 2021 WL 1992130, at *1 n.1 (W.D. Ky. May 18, 2021) (citing *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F. Supp. 3d 830,832 (M.D. Tenn. 2018); *Harper v. Everson*, No. 3:15-cv-575, 2016 WL 9149652, at *2 (W.D. Ky. May 5, 2016); *Perkins v. Rieser*, No. 3:07-cv-325, 2012 WL 1606657, at *1 (S.D. Ohio May 8, 2012); and *DeBiasi v. Charter Cnty. of Wayne*, 284 F. Supp. 2d 760, 768 (E.D. Mich. 2003)).

[2] Although plaintiff's motion states that she requests an extension of time until December 30, 2022 (Doc. 26 at PAGEID 164), she ultimately requests that the Court "extend time for Plaintiff to respond to Objections [until] after Defendants retain new legal counsel. . . ." (*Id.* at PAGEID 165).

[3] The Board filed a similar response to plaintiff's previous motion for extension of time. (*See* Doc. 24 (defendants refiled this response at the direction of the Clerk (*see* Docs. 22, 23))). Because plaintiff references the Board's

I.  **Background**

The following is undisputed. During 2014 and 2015, plaintiff received ethical advice from George Jonson, a partner at Montgomery Jonson LLP, regarding her suspension from the practice of law. Linda Woeber, also a partner at Montgomery Jonson LLP,[4] represents the Board in the above-captioned case regarding the constitutionality of plaintiff's treatment during her sentencing hearing and subsequent confinement, which occurred on July 22, 2019 and after. The Board acknowledges that a conflict (if any) with plaintiff and Mr. Jonson would also be a conflict with Ms. Woeber under the Ohio Rules of Professional Conduct discussed below.

II. **Standard of Review**

The Sixth Circuit looks to the codified Rules of Professional Conduct in determining questions of lawyer disqualification in a given case. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006) ("applying these accepted rules will lead to greater uniformity and predictability with regard to the ethical code of conduct"), *vacated in part on other grounds*, 472 F.3d 436 (6th Cir. 2007). For purposes of this case, the Ohio Rules of Professional Conduct govern whether disqualification of counsel is warranted because of a conflict of interest arising from the representation of a former client. *See OneBeacon Am. Ins. Co. v. Safeco Ins. Co.*, 1:07-cv-358, 2008 WL 4059836, at *2 (S.D. Ohio Aug. 25, 2008) (citing *Yates v. Dicks*, 209 F.R.D. 143, 150 (S.D. Ohio 2002)). *See also* S.D. Ohio Civ. R. 83.3(h) ("The conduct of attorneys admitted to practice before this Court . . . and the supervision of their conduct by this Court, is governed by the Model Federal Rules of

---

earlier response and supporting declaration in her filings, the Court considers them herein. (*See* Doc. 25 at PAGEID 161; Doc. 26 at PAGEID 165).
[4] During 2014 and 2015, both Mr. Jonson and Ms. Woeber were partners at Montgomery Rennie & Jonson LPA.

2

Disciplinary Enforcement," which in turn provide that this Court abides by the "Rules of Professional Conduct adopted by the highest court of the state in which this Court sits. . . .") .[5]

The duty of a lawyer to a former client is governed by Ohio R. Prof. Conduct 1.9, which provides:

RULE 1.9: DUTIES TO FORMER CLIENTS

(a) Unless the former client gives *informed consent, confirmed in writing*, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client.

(b) Unless the former client gives *informed consent, confirmed in writing*, a lawyer shall not *knowingly* represent a person in the same or a *substantially related matter* in which a *firm* with which the lawyer formerly was associated had previously represented a client where both of the following apply:

(1) the interests of the client are materially adverse to that person;

(2) the lawyer had acquired information about the client that is protected by Rules 1.6 and 1.9(c) and material to the matter.

(c) A lawyer who has formerly represented a client in a matter or whose present or former *firm* has formerly represented a client in a matter shall not thereafter do either of the following:

(1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally *known*;

(2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Ohio R. Prof. Conduct 1.9.

---

[5] Ohio adopted the Rules of Professional Conduct in 2007 to replace the Ohio Code of Professional Responsibility. *See Carnegie Cos., Inc. v. Summit Properties, Inc.*, 918 N.E.2d 1052, 1060 (Ohio Ct. App. 2009).

"The use of the term 'shall' in Rule 1.9(a) requires mandatory disqualification when those circumstances defined therein are present." *R.E. Kramig Co., Inc. v. Resolute Mgmt., Inc.*, No. 1:07-cv-658, 2009 WL 1395342, at *4 (S.D. Ohio May 18, 2009) (citing *OneBeacon*, 2008 WL 4059836, at *2). The term "substantially related matter" as used in Rule 1.9(a) is defined as "one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." Ohio R. Prof. Conduct 1.0(n).

The Ohio Rule of Professional Conduct governing the disqualification of law firms is found in Rule 1.10: IMPUTATION OF CONFLICTS OF INTEREST: GENERAL RULE:

    (a)    While lawyers are associated in a *firm*, none of them shall represent a client when the lawyer *knows* or *reasonably should know* that any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the *firm*.

    (b)    When a lawyer is no longer associated with a *firm*, no lawyer in that *firm* shall thereafter represent a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, if the lawyer *knows or reasonably should know* that either of the following applies:

        (1)    the formerly associated lawyer represented the client in the same or a *substantially related matter*;

        (2)    any lawyer remaining in the *firm* has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

    (c)    When a lawyer has had *substantial* responsibility in a matter for a former client and becomes associated with a new *firm*, no lawyer in the new *firm* shall *knowingly* represent, in the same matter, a person whose interests are materially adverse to the interests of the former client.

    (d)    In circumstances other than those covered by Rule 1.10(c), when a lawyer becomes associated with a new *firm*, no lawyer in the new *firm* shall

> *knowingly* represent a person in a matter in which the lawyer is personally disqualified under Rule 1.9 unless both of the following apply:
>
> (1) the new *firm* timely *screens* the personally disqualified lawyer from any participation in the matter and that lawyer is apportioned no part of the fee from that matter;
>
> (2) *written* notice is given as soon as practicable to any affected former client.
>
> (e) A disqualification required by this rule may be waived by the affected client under the conditions stated in Rule 1.7.
>
> (f) The disqualification of lawyers associated in a *firm* with former or current government lawyers is governed by Rule 1.11.

Ohio R. Prof. Conduct 1.10.

**III. Analysis**

Plaintiff argues that the matter for which she received ethics advice from Mr. Jonson in 2014-2015 (her suspension from the practice of law) is substantially related to the above-captioned civil rights action. Plaintiff also argues that Mr. Jonson represented to her that he expected to continue representing her thereafter—contrary to the "dishonest" statement in his declaration otherwise. (Doc. 25 at PAGEID 161). Plaintiff does not submit a supporting affidavit or declaration. Plaintiff proffers only a November 14, 2022 email from the Ohio Department of Administrative Services/Office of Risk Management (ORM), in which an employee states that plaintiff's "request for representation for this disciplinary matter" would be forwarded to Montgomery Jonson LLP. (Doc. 26-1).

The Board argues that the above-captioned lawsuit is not substantially related to the matter for which Mr. Jonson previously represented plaintiff in 2014 and 2015. The Board argues that plaintiff's position—that "information obtained by the Montgomery Jonson law firm in its representation of plaintiff Hunter as judge of the Juvenile Court[] was directly related to the

injuries she sustained while incarcerated [and] is substantially related to the instant lawsuit"—is conclusory and illogical. (Doc. 25 at PAGEID 162-63). In support of its position, the Board submits the declarations of Mr. Jonson and Ms. Woeber. In Mr. Jonson's declaration, he states that he last corresponded with plaintiff in July of 2015 and "did not make a commitment to represent" her in the future on any matter. (Doc. 24 at PAGEID 157). He further states that he "never communicated with [plaintiff] about her incarceration or any of the facts or allegations contained in the above captioned action." (*Id.* at PAGEID 158). In Ms. Woeber's declaration, she explains that her law firm represents Hamilton County judges pursuant to Ohio Supreme Court sponsorship and the Ohio Judges' Liability Program administered by ORM. (Doc. 27-1 at PAGEID 175). Ms. Woeber further states that this ORM contract does not bind her firm to any particular representation, and her firm is free to decline representation—which is what occurred following the ORM email referenced by plaintiff. (*Id.* at PAGEID 176, referring to Doc. 26-1).

The two legal matters at issue in plaintiff's motions are not "substantially related" as that term is defined in the Ohio Rules of Professional Conduct. *See* Ohio R. Prof. Conduct 1.0(n). Plaintiff fails to demonstrate that the legal matter for which Mr. Jonson advised her in 2014 and 2015 (ethical advice related to plaintiff's suspension) and the above-captioned matter (alleged constitutional violations beginning in mid-2019, including the excessive use of force by Hamilton County sheriff's deputies while escorting plaintiff from a courtroom and the conditions of her confinement at the Hamilton County Justice Center) are part of the same "transaction or legal dispute[.]" *Id.* Likewise, plaintiff does not articulate the type of "confidential factual information" from the prior matter that would "materially advance" the Board's position in the above-captioned matter. *Id.* It is not otherwise apparent to the Court how facts relevant to plaintiff's treatment during her sentencing hearing and subsequent confinement at the Hamilton

County Justice Center would necessarily overlap with facts relevant to her suspension from the practice of law.  According to Mr. Jonson's statement made under penalty of perjury, the facts underlying the above-captioned matter took place nearly four years after his last communication with plaintiff, and he disclaims any knowledge of this matter.  Plaintiff seems to imply that the but-for causal relationship between her suspension and her sentencing and jail time satisfies the Ohio Rules of Professional Conduct's definition of a "substantially related matter."  *Id.*  Review of that definition, however, makes clear that it does not.

On the basis of the foregoing, plaintiff's motion to disqualify counsel (Doc. 25) is **DENIED**.  Plaintiff's motion to extend time (Doc. 26) is **GRANTED IN PART** as follows: plaintiff shall have **10 days** from the entry of this Order to file objections to the Report and Recommendation (Doc. 17), and defendants shall have **14 days** from any such objections to respond.

**IT IS SO ORDERED**.

_____
Karen L. Litkovitz
United States Magistrate Judge