\UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TRACIE M. HUNTER,<br> Plaintiff, | Case No. 1:21-cv-544<br>Hopkins, J.<br>Litkovitz, M.J. |
| vs. | |
| HAMILTON COUNTY BOARD OF<br>COMMISIONERS, *et al.*,<br> Defendants. | REPORT AND<br>RECOMMENDATION |

Pro se plaintiff Tracie M. Hunter filed a civil rights action pursuant to 42 U.S.C. § 1983 and Ohio state law against the Hamilton County Board of Commissioners, the Hamilton County Sheriff's Office (HCSO), and several John/Jane Does.[1] This matter is before the Court on defendant HCSO and its employee John/Jane Doe deputies' (together, the HCSO defendants') motion to dismiss (Doc. 37), plaintiff's response (Doc. 43),[2] and the HCSO defendants' reply (Doc. 44).

**I. Background**

Plaintiff, a former Juvenile Court judge for Hamilton County, Ohio, was convicted in Ohio state court of improperly using her elected office in connection with a public contract (Doc. 2 at PAGEID 46, ¶ 13). On July 22, 2019, plaintiff was sentenced to serve a six-month sentence of imprisonment. (*Id.*). This lawsuit concerns her sentencing hearing and the jail sentence that followed.

---

[1] In her complaint, plaintiff identifies the John and Jane Doe defendants as "responsible for providing medical care at the Hamilton County Justice Center and . . . employees of Hamilton County, Ohio or its medical provider subcontractor, Naph Care" and "corrections officers or sheriff's deputies employed at Hamilton County, Ohio." (Doc. 2 at PAGEID 45, ¶¶ 9-10).
[2] Plaintiff requests oral argument. Pursuant to S.D. Ohio Civ. R. 7.1, the Court finds that oral argument is not "essential to the fair resolution" of this motion. Accordingly, plaintiff's request for oral argument is denied.

On July 23, 2021, plaintiff filed an action in the Hamilton County Court of Common Pleas. (Doc. 2). Plaintiff's complaint alleges that the sheriff's deputy that escorted her from the sentencing courtroom to the Hamilton County Justice Center used excessive force and that many conditions of her subsequent confinement were unconstitutional. (*See id.*). The complaint also alleges state law claims for negligent hiring, training, and retention under state law; and assault and battery under state law. (*See id.*). Plaintiff states that she paid the state court clerk of court to serve defendants. (Doc. 43 at PAGEID 238). *See* Ohio R. Civ. P. 4.1(A) ("Service by clerk").

On August 24, 2021, defendant Hamilton County Board of Commissioners removed the action to this Court. (Doc. 1). Exhibit C to the removal is the return of service from the state court docket for defendant Hamilton County Board of Commissioners. (Doc. 1-4 at PAGEID 42). At the time of removal, the federal Court's docket did not reflect the status of service of process on the remaining defendants. A few weeks later, on September 13, 2021, the docket for plaintiff's state-court action showed service of process was returned unexecuted on the HCSO defendants. *Tracie M. Hunter vs. Hamilton Cnty. Bd. of Cnty. Comm'rs.*, No. A 2102539 (Hamilton County Court of Common Pleas docket sheet), HAMILTON CNTY. CLERK OF CTS., *available at* https://www.courtclerk.org/records-search/case-number-search/ (last visited December 12, 2023).[3]

Over nineteen months later, on May 3, 2023, this Court issued an Order to plaintiff to show cause why her case should not be dismissed against the HCSO defendants for failure to perfect service of process under Fed. R. Civ. P. 4(m). (Doc. 30). Plaintiff responded (Doc. 31),

---

[3] The HCSO defendants state that they attached this docket sheet to their motion as "Exhibit A" (Doc. 37 at PAGEID 213), but nothing is attached to their motion. Regardless, "these court records are available online to members of the public; as they are court records, this court may take judicial notice of them." *Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)). The web address unique to plaintiff's state court case history is not directly accessible but can be located via search of plaintiff's case number (A 2102539) from the URL referenced.

the Court "accept[ed] plaintiff's statement of cause," and the Court granted plaintiff an additional 60 days from the date of its Order to complete service. (Doc. 32 at PAGEID 196). Plaintiff ultimately executed service on the HCSO defendants[4] on July 17, 2023—within the timeframe contemplated by the Court's Order extending the deadline for service and nearly two years after plaintiff filed her lawsuit. (Doc. 34).

On August 7, 2023, the HCSO defendants filed the pending motion. They argue, primarily, that plaintiff's action must be dismissed against them because plaintiff failed to commence an action under Ohio law within the applicable statutes of limitations.

## II.     Legal standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A Rule 12(b)(6) motion is generally an "inappropriate vehicle" for dismissing a claim on statute of limitations grounds because courts are limited to considering only the allegations of the complaint. *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). The statute of limitations is an affirmative defense, so "the allegations in the complaint" must "affirmatively show that the claim

---

[4] In particular, the returns refer to Hamilton County Sheriff Charmaine McGuffey, two Jane Doe Deputy Sheriffs, two John Doe Deputy Sheriffs, and an unknown Jane/John Doe. (Doc. 34).

3

is time-barred" to warrant dismissal at the pleading stage. *Id.* (quoting *Cataldo*, 676 F.3d at 547). If a defendant makes this showing, "the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Id.* (quoting *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)).

Ordinarily, complaints filed by pro se litigants are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Plaintiff, however, "has been educated as an attorney, and was practicing as an attorney and judge not long before she filed this case. Therefore, "[p]laintiff is not entitled to the leniency generally afforded to pro se litigants." *Hunter v. Hamilton Cnty.*, No. 1:15-cv-540, 2016 WL 4836810, at *4 n.2 (S.D. Ohio Sept. 15, 2016) (citing *Johansen v. Presley*, 977 F. Supp. 2d 871, 876 (W.D. Tenn. 2013)).

### III. Arguments

The HCSO defendants argue that plaintiff failed to commence her action against them within the applicable statutes of limitations. They argue that Ohio law governs the limitations periods for all of her federal and state law claims as well as the procedural rules related to those limitations periods. They argue that under Rule 3(A) of the Ohio Rules of Civil Procedure (Rule 3(A) or Ohio's commencement rule), a suit is not commenced under Ohio law unless service is completed within one year of the filing of the complaint. Because the HCSO defendants were not served until nearly two years after the filing of plaintiff's complaint, they argue that plaintiff's claims are time-barred. They argue that Ohio law applying Rule 3(A) contemplates only limited exceptions to this rule that are inapplicable here. They argue that actual knowledge of plaintiff's lawsuit does not change the result, nor does the Court's decision to extend the time to effect service under the Federal Rules of Civil Procedure (Fed. R. Civ. P. 4(m)). (*See* Doc.

4

32). They argue that equitable tolling does not apply to further extend the limitations period. Finally, defendants argue that the HCSO is not *sui juris* and not a proper party to plaintiff's lawsuit.

In plaintiff's response, she incorporates arguments made in her response (Doc. 31) to the Court's Order to show cause regarding service of process (Doc. 30), which the Court also summarizes here as relevant. Plaintiff argues that the removal of her action rendered Rule 3(A) irrelevant. Plaintiff argues that this Court's decision to extend the Rule 4(m) deadline—without objection by the HCSO defendants—coupled with the HCSO defendants' counsel's actual knowledge of this lawsuit resolves any statutes of limitations issues. Plaintiff argues that she did not have access to either the state court's or this Court's "website" because she was proceeding pro se[5] and did not immediately learn of the removal of her case. (Doc. 43 at PAGEID 232, 237). Plaintiff argues that even after this Court entered an Order granting her electronic filing rights on December 14, 2021 (Doc. 12), the Clerk erroneously failed to send her documents electronically until she brought the issue to the Clerk's attention on June 27, 2022. Plaintiff also seems to argue that her claims have not accrued or that an exception to the statutes of limitations applies—stating that HCSO defendants purposefully evaded their statutory duty to accept service by the Hamilton County Clerk of Courts.

Finally, unrelated to statutes of limitations, plaintiff argues that she raises a *Monell* claim against Hamilton County, Ohio. Therefore, she argues that her complaint should not be dismissed as to defendant HCSO at this juncture.

---

[5] In her response to the Court's Order to show cause, plaintiff argues that her lack of access related to her status as a suspended attorney. (*See* Doc. 31 at PAGEID 190).

5

In reply, the HCSO defendants largely reiterate the arguments made in their opening brief. They acknowledge that municipal liability is available under § 1983, but they argue that it does not negate the requirement to sue the proper party.

IV.     Analysis

Plaintiff alleges § 1983 claims against the HCSO defendants—in particular, Fourth, Fifth, Eighth, and Fourteenth Amendment violations. (Doc. 2 at PAGEID 58-63). Plaintiff also alleges state law claims for negligent hiring, training, supervision, and retention; and assault and battery. (*Id.* at PAGEID 62-63). The parties do not appear to dispute the applicable statutes of limitations. Rather, the parties appear to dispute the applicable commencement rule and related procedural rules.

Plaintiff's civil rights claims under 42 U.S.C. § 1983 are governed by the two-year statute of limitations set forth in Ohio Revised Code § 2305.10. *See LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995) (quoting *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc) ("[T]he appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio . . . requires that actions . . . be filed within two years after their accrual.")). Plaintiff does not appear to contest that this statute of limitations also applies to her state-law negligent hiring, training, supervision, and retention claims. A one-year statute of limitations applies to her assault and battery claims. *See* Ohio Rev. Code § 2305.111(B) ("[A]n action for assault or battery shall be brought within one year after the cause of the action accrues.").

    A.    Federal claims

The HCSO defendants' position is premised on Ohio's Rule of Civil Procedure governing the commencement of actions:

6

> A civil action is commenced by filing a complaint with the court, *if service is obtained within one year from such filing* upon a named defendant, or upon an incorrectly named defendant whose name is later corrected pursuant to Civ. R. 15(C), or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ. R. 15(D).

Ohio R. Civ. P. 3(A) (emphasis added). The HCSO defendants then rely on the following statement in *Coleman v. Dep't of Rehab. & Corr.*: "When we use a state's Statute of Limitations, we also use its procedural rules affecting that Statute of Limitations." 46 F. App'x 765, 769 (6th Cir. 2002) (citing *West v. Conrail*, 481 U.S. 35, 39-40 n.6 (1987)). *See also Webster v. Spears*, 664 F. App'x 535, 537 (6th Cir. 2016) (citing *Coleman*). The HCSO defendants argue that because they are using Ohio's statute of limitations for the § 1983 claims, they must also "use its procedural rules affecting that Statute of Limitations"—including Ohio's commencement rule. *Coleman*, 46 F. App'x at 769. Because plaintiff did not serve the HCSO defendants within one year of the date that she initially filed suit in state court (July 23, 2021), they argue that plaintiff's claims are all time-barred.

*Coleman* and *Webster* are distinguishable and do not compel the Court to apply Ohio's commencement rule to plaintiff's § 1983 claims. When *Coleman* and *Webster* used the phrase "procedural rules affecting th[e] Statute of Limitations[,]" they both referred to Ohio's savings statute, Ohio Revised Code § 2305.19(A).[6] These decisions invoked Rule 3(A) of the Ohio Rules of Civil Procedure only to the extent that it was necessary to construe Ohio's savings statute, which specifically refences the "commencement" of an action. Ohio Rev. Code §

---

[6] Ohio Revised Code § 2305.19(A) states:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant.

7

2305.19(A). *See Coleman*, 46 F. App'x at 769; *Webster*, 664 F. App'x at 537-38. *Coleman* relied on the following footnote in *West v. Conrail*, 481 U.S. 35 (1987):

> In some cases, the determination of the *length of the borrowed period* may require examination of the tolling rules that are followed in the jurisdiction from which the statute of limitations is borrowed. *See, e.g., Wilson v. Garcia*, 471 U.S. 261, 269, 105 S. Ct. 1938, 1943, 85 L. Ed. 2d 254 (1985) (suggesting that length of limitations period and "closely related questions of tolling and application" are governed by state law in action brought under 42 U.S.C. § 1983); *Chardon v. Fumero Soto*, 462 U.S. 650, 661-662, 103 S. Ct. 2611, 2618-2619, 77 L. Ed. 2d 74 (1983) (§ 1988 requires borrowing Puerto Rico's statute of limitations and its rule that, after tolling ends, the statute of limitations begins to run anew in § 1983 action); *Board of Regents, Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 484-485, 100 S. Ct. 1790, 1795, 64 L .Ed. 2d 440 (1980) (§ 1988 requires federal courts in § 1983 actions to refer to state statute of limitations and coordinate tolling rules unless state law is inconsistent with federal law). *The governing principle is that we borrow only what is necessary to fill the gap left by Congress*.

*Id.* at 39-40 n.6 (emphasis added). "[T]he length of the borrowed period" is a separate matter from when an action is considered commenced. *Id.* This is made clear by another footnote in *Conrail*:

> When the underlying cause of action is based on state law, and federal jurisdiction is based on diversity of citizenship, state law not only provides the appropriate period of limitations but also determines whether service must be effected within that period. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-753, 100 S. Ct. 1978, 1986, 64 L. Ed. 2d 659 (1980). Respect for the State's substantive decision that actual service is a component of the policies underlying the statute of limitations requires that the service rule in a diversity suit "be considered part and parcel of the statute of limitations." *Id.*, at 752, 100 S. Ct. at 1978 (footnote omitted). *This requirement, naturally, does not apply to federal-question cases*.

*Id.* at 39 n.4 (emphasis added). Thus, *Conrail* dissuades the Court from adopting Ohio's commencement rule over the more generous federal commencement rule[7] as it pertains to plaintiff's federal-question claims.

Other Sixth Circuit authority supports the conclusion that Ohio's commencement rule does not apply to plaintiff's § 1983 claims. In *Macon v. ITT Cont'l Baking Co., Inc.*, the Court

---

[7] *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

considered whether, when borrowing another federal statute's limitations period, it was also required to apply a related service deadline. 779 F.2d 1166 (6th Cir. 1985). The *Macon* court analogized to the § 1983 context:

> Like a section 1983 claim, a hybrid section 301/fair representation claim remains a federal cause of action for which a limitations period is borrowed. . . . [C]ases concerning section 1983 demonstrate that a statute of limitations is borrowed for a federal cause of action without also borrowing the rules concerning when the statute begins to run.

*Id.* at 1172. More specifically, the Sixth Circuit explained: "even if a state statute of limitations is borrowed and that state's rules also provide that service, not filing, tolls the statute of limitations, '[t]he prevailing rule among the federal courts of appeals is that Rule 3 [of the Federal Rules of Civil Procedure] governs the time of commencement of the action in cases *where a federal matter or cause of action is involved*.'" *Id.* (quoting *Wells v. City of Portland*, 102 F.R.D. 796, 800 (D. Or. 1984) and collecting cases) (emphasis added). *See also Henderson v. United States*, 517 U.S. 654, 657 n.2 (1996) ("In a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations.").

Finally, the HCSO defendants cite *Easley v. Pettibone Michigan Corp.* for the proposition that "[s]tate law determines when an action is commenced *for removal purposes*." 990 F.2d 905, 908 (6th Cir. 1993) (emphasis added). *Easley* dealt with the intersection of the automatic bankruptcy stay and a lawsuit against a debtor. *Easley* is distinguishable because, in this case, there is no dispute about the timing of the removal or this Court's jurisdiction over the removal. Further, in *Easley*, the underlying action arose under state law (products liability). As noted above and discussed in more detail below, whether the underlying cause of action arises under federal or state law is a critical distinction for commencement purposes. Therefore, the Court does not find that *Easley* compels a different conclusion on plaintiff's federal claims.

9

For the foregoing reasons, the Court concludes that its application of Ohio's statute of limitations to plaintiff's § 1983 claims does not compel its application of Ohio's commencement rule. As such, the Court finds that plaintiff's § 1983 claims should not be dismissed based on statute of limitations grounds based on Ohio Civil Rule 3(A).

B. State-law claims

In *Walker v. Armco Steel Corp.*, when considering state-law claims under its diversity jurisdiction, the Supreme Court concluded that "state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction." 446 U.S. 740, 752-53 (1980). *See also Macon*, 779 F.2d at 1172 n.5 (citing *Walker* and noting that the pertinent distinction to determining the appropriate commencement rule is whether a court is considering a state or federal claim) ("Policies favoring close adherence to state law in diversity cases, of course, are largely absent when the legal action itself is essentially based upon federal substantive law."). For plaintiff's supplemental state-law claims, then, "state law determines when the claim commenced because 'it is the source of the right sued upon, and not the ground on which federal jurisdiction is founded, which determines the governing law.'" *Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740, 746 (E.D. Ky. 2011) (quoting *Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir. 1994)). The Court in *Bradford* determined that the reasoning of *Walker* applied with equal force when a court considers state-law claims under its supplemental jurisdiction. *Id. See also French v. Daviess Cnty., Ken.*, No. CIV. A. 4:07CV-105-M, 2009 WL 1766928, at *5 (W.D. Ky. June 23, 2009) (collecting cases holding that the commencement of actions for purposes of pendant state-law claims is governed by state law). This Court agrees

10

that Ohio service requirements control the commencement of plaintiff's state law claims for purposes of the statute of limitations.

Therefore, if the Court accepts the HCSO defendants' argument that plaintiff's claims accrued—at the latest—on October 5, 2019 (the date of plaintiff's release from jail), there is no question that plaintiff did not satisfy the relevant statutes of limitations for the state-law claims, as she did not obtain service on the HCSO defendants until almost *two years* after she filed her complaint on July 23, 2021. *See* Ohio R. Civ. P. 3(A) ("A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing. . . ."). But just as Ohio's commencement rules apply to claims before the Court on supplemental jurisdiction, Ohio law also governs these claims' accrual and tolling. *See Bowden v. City of Franklin, Ky.*, 13 F. App'x 266, 274 (6th Cir. 2001) ("In contrast to the federal civil rights claims discussed above, the Court must look to state law to determine when the claim for relief accrues when that claim is before a federal court on diversity or supplemental jurisdiction."); *Conrail*, 481 U.S. at 39-40 n.6. ("[T]he determination of the length of the borrowed period may require examination of the tolling rules that are followed in the jurisdiction from which the statute of limitations is borrowed.").

Plaintiff seems to argue either that her claims have not accrued or that there is an exception to the statutes of limitations. In her response, plaintiff paraphrases language in the assault and battery statute of limitations, arguing:

> Contrary to Defendants' assertions, pursuant to RC 2305.10(A), Plaintiff had two years to bring those known bodily injuries and personal property damages claim in a civil action, at the absolute minimum. Additionally, if the plaintiff did not know the identity of the person who allegedly committed the sexual abuse on the date on which it allegedly occurred, the earlier of the following dates: (a) The date on which the plaintiff learns the identity of that person; or (b) The date on which, by the exercise of reasonable diligence, the plaintiff should have learned the identity of that person.

11

(*See* Doc. 43 at PAGEID 235). *See* Ohio Rev. Code § 2305.111(B)(2) (If a plaintiff does not know the identity of the tortfeasors on the day the assault or battery allegedly occurred, the cause of action accrues on "the earlier of the following dates: (a) The date on which the plaintiff learns the identity of that person; (b) The date on which, by the exercise of reasonable diligence, the plaintiff should have learned the identity of that person."). Plaintiff offers no authority that Ohio Revised Code § 2305.111(B) should apply to her negligent hiring, training, supervision, and retention claims. Plaintiff seems to argue that her assault and battery claims have still not accrued because she has not identified the Jane Doe implicated in these claims. (*See* Doc. 2 at PAGEID 62-63).

      The Court concludes that plaintiff's complaint "affirmatively show[s]" that she cannot satisfy the assault and battery claims' statute of limitations. Plaintiff's complaint admits that the Jane Doe defendant responsible for these claims was a HCSO deputy and that multiple other HCSO deputies witnessed the incident. (*See id.* at PAGEID 46, ¶ 13 ("[Plaintiff] was hit or pushed, then violently grabbed from behind by Defendant Deputy Jane Doe without warning, pulled off her feet and dragged the length of the courtroom in a dress from the defense table to a hallway outside the courtroom, causing serious injuries to Plaintiff Hunter."); ¶ 14 ("multiple deputies were in the courtroom" when this took place)). For the assault and battery claims to satisfy Rule 3(A) and the applicable statute of limitations, this Court would have to determine that a person exercising reasonable diligence (*see* Ohio Rev. Code § 2305.111(B)(2)(b)) with this information would not have identified the Jane Doe defendant until July 17, 2022[8]—*nearly three years after her release from jail*. Plaintiff states in her response that, notwithstanding being released from jail on October 5, 2019, she did not learn the identities of the John and Jane Doe

---

[8] Plaintiff ultimately served the HCSO defendants on July 17, 2023.

12

HCSO defendants "because a scheduling order for discovery has not been issued by this Court." (Doc. 43 at PAGEID 235). Plaintiff offers no other argument that might mitigate her failure, in the more than four years since her October 5, 2019 release from incarceration, to make any independent effort to learn the identities of any of the John and Jane Doe defendants. Even making all inferences in plaintiff's favor, it is clear from the face of plaintiff's complaint that this claim is time-barred.

The Court also concludes that plaintiff's complaint establishes that her state-law negligent hiring, training, supervision, and retention claims are time-barred. These claims relate to the Jane Doe HCSO deputy's use of force while plaintiff was taken into custody after sentencing on July 22, 2019. (*See* Doc. 2 at PAGEID 62, ¶¶ 108-10). Plaintiff alleges that she was "immediately aware of the severe pain" that resulted from the use of force. (*Id.* at PAGEID 47, ¶ 18). The two-year statute of limitations applicable to these claims—Ohio Revised Code § 2305.10(A)—states that a cause of action for bodily injury or injury to personal property "accrues . . . when the injury or loss to person or property occurs." *Id.* Exceptions to this accrual rule relate to hazardous or toxic chemicals, ethical drugs or medical devices, and the like, and are not applicable. *See id.* at § 2305.10(B)(1)-(5). As such, it is clear from the face of plaintiff's complaint that plaintiff's state-law negligent hiring, training, supervision, and retention claims are time-barred.

Having established that these claims are time-barred, the burden shifts to plaintiff to establish an exception. *See Lutz*, 717 F.3d at 464. Plaintiff first asserts that Rule 3(A) did not apply upon removal to federal court. But for the reasons explained above, Rule 3(A) applies to plaintiff's state-law claims. *See Bradford*, 767 F. Supp. 2d at 746. Plaintiff next argues that the HCSO defendants' counsel's actual knowledge of the lawsuit waives the statute of limitations

13

defense. This is contrary to well-established state and federal law. *See Bell v. Midwestern Educ. Serv., Inc.*, 624 N.E.2d 196, 202 (Ohio Ct. App.1993) ("It also does not matter that a party has actual knowledge of the lawsuit and has not in fact been prejudiced by the method of service."); *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004) ("Actual knowledge of a lawsuit does not substitute for proper service under Fed. R. Civ. P. 4."); *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999) (citing *Bell* and cases cited therein) ("Ohio courts agree with the Sixth Circuit that actual knowledge and lack of prejudice cannot take the place of legally sufficient service.").

Finally, plaintiff highlights circumstances that she believes should excuse her delay in service. She argues that after the removal of her case to this Court, she obtained electronic case filing rights, but the Clerk failed to update her email profile and send her case filings for a period approximately six months. Plaintiff further points out that this Court accepted these circumstances as cause for extending the federal service deadline (Fed. R. Civ. P. 4(m)). (*See* Doc. 32). Plaintiff lastly emphasizes that she paid the Hamilton County Clerk of Courts to complete service and argues that the HCSO defendants attempted to evade service.

Because Rule 3(A) applies to these claims, the Court must consider how Ohio courts apply it:

> Ohio courts have generally found that the "one-year time requirement [for service] cannot be enlarged." *Apostolouski v. Sharp*, 2005-Ohio-2559, 2005 WL 1220739, ¶ 22 (Ohio Ct. App. 2005) (quoting *Temple v. John Galt Co.*, No. 96APE10-1364, 1997 WL 177627 (Ohio Ct. App. Apr. 10, 1997)). Notwithstanding this general rule, Ohio courts have routinely found exceptions "where the failure of service is the result of circumstances outside plaintiff's control." *Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 25 N.E.3d 355, 368 (Ohio Ct. App. 2014). For example, the one-year service requirement in Ohio Civil Rule 3(A) has been enlarged where "such failure is caused by unreasonable delay attributable to the clerk of courts or the court itself." *Scott v. Orlando*, 442 N.E.2d 96 (Ohio Ct. App. 1981); *see also Thomas v. Corrigan*, 733 N.E.2d 1213 (Ohio Ct. App. 1999) (excusing a plaintiff's failure

14

>to obtain service within one year because the plaintiff's "ability to serve [defendant] within a year was defeated by the trial court's erroneous dismissal of the case."). Enlargement of the one-year service requirement has also been found appropriate in cases where the plaintiff has failed to perfect service as a result of the defendants' dilatory tactics. *See Eichenberger*, 25 N.E.3d at 369 (holding enlargement under Ohio Civ. R. 3(A) to be justified where the defendants' "dilatory tactics unfairly prevented [the plaintiff] from discovering the identity of a previously unidentified defendant[.]").

*Finnell v. Eppens*, No. 1:20-cv-337, 2023 WL 5051094, at *7 (S.D. Ohio July 19, 2023) (alterations in original).

The Court concludes that the circumstances at bar do not warrant an exception to Rule 3(A) as it applies to plaintiff's state-law claims. To reach this conclusion, the Court reiterates the relevant timeline.

Plaintiff filed her state court action on July 23, 2021. Plaintiff asserts that she paid the Hamilton County Clerk's office to serve the HCSO defendants, but she did not have electronic access to the state court docket because of her status as either a suspended attorney (*see* Doc. 31 at PAGEID 190) or a pro se litigant (*see* Doc. 43 at PAGEID 232, 237). On August 24, 2021, defendant Hamilton County Board of Commissioners removed the action to this Court. (Doc. 1). Plaintiff became aware of the removal *the next day*—notwithstanding any issues with electronic access. (*See* Doc. 31 at PAGEID 190 ("About August 25[, 2021], Plaintiff became aware that the case had been removed. . . .")). On September 13, 2021, the state court's docket reflects five entries stating "NOTICE TO TRACIE M HUNTER AS TO REFUSED SERVICE" as to the HCSO defendants. *See Tracie M. Hunter vs. Hamilton Cnty. Bd. of Cnty. Comm'rs.*, No. 1 2102539 (Hamilton County Court of Common Pleas docket sheet), HAMILTON CNTY. CLERK OF CTS., *available at* https://www.courtclerk.org/records-search/case-number-search/ (last visited December 12, 2023) and *supra* note 1.

15

On December 13, 2021 plaintiff obtained electronic filing rights in this Court. (Doc. 12, entered December 14, 2021). Plaintiff asserts that, due to a mistake by the Clerk with her email, she "did not receive any electronic filings" between that date and June 27, 2022. (Doc. 31 at PAGEID 191). Plaintiff took no further action regarding service on the HCSO defendants until the Court's show cause Order—approximately 10 months later. (*See* Doc. 30).

None of these circumstances appear to meet the threshold for enlarging the Rule 3(A) service deadline under Ohio law. It is simply not apparent to the Court how the Clerk's error—which plaintiff states affected her electronic *notice* of case filings but not electronic *access to the docket* between December 2021 and June 2022—contributed to the delay in service on the HCSO defendants. The state court's docket clearly reflects a failure of service on the HCSO defendants as of September 13, 2021, and there is no reason that plaintiff could not have obtained a copy of the state court docket via non-electronic means.[9] *See Harness v. Taft*, 801 F. App'x 374, 377 (6th Cir. 2020) ("Parties have an independent obligation to monitor all developments in an ongoing case and cannot rely on the clerk's office to fulfill this responsibility for them."). Moreover, the Clerk corrected its error approximately one month *before* service on the HCSO defendants was due pursuant to Rule 3(A).

Plaintiff also implies that she should have been able to rely on the Hamilton County Clerk of Court's service on the HCSO defendants because she paid it for that service. (*See* Doc. 43 at PAGEID 237-38). She further argues that the multiple refused summonses demonstrate that the HCSO defendants attempted to evade service. (*Id.* at PAGEID 238). Ultimately, however, "[i]t is the plaintiff's burden to be sure that proper service is accomplished within the one year provided by law." *Kowalski v. Pong*, No. 27577, 2017 WL 6628490 (Ohio Ct. App.

---

[9] Hamilton County Court of Common Pleas records are now publicly accessible online. It is not clear when this access policy changed.

16

Dec. 29, 2017) (alteration in original) (quoting *Bell*, 624 N.E.2d at 204). *See also* Ohio R. Civ. P. 4.6(E) ("[T]he serving party shall be responsible for determining if service has been made and shall timely file written instructions with the clerk regarding completion of service notwithstanding the provisions in Civ.R. 4.1 through 4.6 which instruct a clerk to notify . . . the serving party of failure of service of process."). Further, Rule 4.6(C) of the Ohio Rules of Civil Procedure specifically contemplates attempted service of process that is "refused" and the available recourse.[10] *See also Apostolouski v. Sharp*, No. 04AP-1105, 2005 WL 1220739, at *6 ("[T]he Ohio Supreme Court has declined to create an exception to Civ. R. 3(A) based on an 'indicia of legal gamesmanship on the part of the defendant and her counsel[.]'") (quoting *Maryhew v. Yova*, 464 N.E.2d 538, 543 (Ohio 1984)). Accordingly, the Court declines to find that the HCSO defendants' refusal of service is tantamount to "dilatory tactics" that should excuse compliance with Rule 3(A). *See Finnell*, 2023 WL 5051094, at *7 (quoting *Eichenberger*, 25 N.E.3d at 369).

---

[10] This Rule reads:

> If attempted service of process by United States certified or express mail or by commercial carrier service within or outside the state is refused, and the certified or express mail envelope or return of the commercial carrier shows such refusal, or the return of the person serving process by personal service within or outside the state or by residence service within the state specifies that service of process has been refused, the clerk shall forthwith notify the attorney of record or, if there is no attorney of record, the party at whose instance process was issued and enter the fact and method of notification on the appearance docket. If the attorney, or serving party, after notification by the clerk, files with the clerk a written request for ordinary mail service, the clerk shall send by United States ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in written instructions furnished to the clerk. The mailing shall be evidenced by a certificate of mailing which shall be completed and filed by the clerk. Answer day shall be twenty-eight days after the date of mailing as evidenced by the certificate of mailing. The clerk shall endorse this answer date upon the summons which is sent by ordinary mail. Service shall be deemed complete when the fact of mailing is entered of record. Failure to claim United States certified or express mail or commercial carrier service is not refusal of service within the meaning of this division. This division shall not apply if any reason for failure of delivery other than "Refused" is also shown on the United States certified or express mail envelope.

Ohio R. Civ. P. 4.6(C).

The result is unchanged if the Court considered these circumstances under an equitable tolling framework. "[C]laims arising under state law are governed by state tolling doctrine." *Roberson v. Macnicol*, 698 F. App'x 248, 250 (6th Cir. 2017). Summarizing Ohio's equitable tolling doctrine, the Sixth Circuit has held:

> Under Ohio law, "[a] litigant seeking equitable tolling must demonstrate that he or she diligently pursued his or her rights, but some extraordinary circumstance stood in his or her way and prevented timely action." *Lottridge v. Gahanna-Creekside Invs.*, L.L.C., 36 N.E.3d 744, 753 (Ohio Ct. App. 2015). Equitable tolling is "to be applied sparingly and only in exceptional circumstances." *Id.*

*G.G. Marck & Assocs., Inc. v. Peng*, 762 F. App'x 303, 312 (6th Cir. 2019) (alteration in original). The Sixth Circuit has also remarked that "the Ohio Supreme Court has said precious little on the subject," and noted that Ohio courts of appeal generally limit the application of equitable tolling to cases with "a showing of actual or constructive fraud by a party in the form of representations that the statute of limitations was larger than it actually was, promises of a better settlement if the lawsuit was not filed, or other similar representations or conduct." *Weikle v. Skorepa*, 69 F. App'x 684, 688 (6th Cir. 2003) (quoting *Sabouri v. Ohio Dept. of Job & Family Serv.*, 763 N.E.2d 1238, 1241 (Ohio Ct. App. 2001) (citing *Livingston v. Diocese of Cleveland*, 710 N.E.2d 330 (Ohio Ct. App. 1998))).

As the foregoing discussion makes clear, plaintiff did not face any extraordinary circumstance that prevented timely service, and she was not diligent in attempting to achieve service on the HCSO defendants. The HCSO defendants' motion should be granted as to plaintiff's state-law claims.

C. <u>HCSO</u>

The HCSO defendants' final argument is that HCSO should be dismissed because it is not *sui juris* under Ohio law. Plaintiff argues that such a dismissal would be premature because

she asserts that Hamilton County is liable as a municipality under § 1983. The Court agrees with the HCSO defendants.

Under Fed. R. Civ. P. 17(b)(3), Ohio law determines a non-individual, non-corporate defendant's capacity to be sued. *See Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (holding county sheriff's office is not a legal entity capable of being sued under Ohio law). Therefore, HCSO should be dismissed as a defendant.

V.      Conclusion

The Court finds that Rule 3(A) does not apply to plaintiff's § 1983 claims, and the HCSO defendants' motion should be denied as to such claims. Rule 3(A) does, however, apply to plaintiff's state-law claims, rendering them time-barred because plaintiff failed to commence an action under Ohio law during the applicable statutes of limitations. Because plaintiff has not demonstrated that any exception applies, the HCSO defendants' motion should be granted as to plaintiff's state law claims.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The HCSO defendants' motion to dismiss (Doc. 37) be **GRANTED in part and DENIED in part** as explained herein.

2. The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal in forma pauperis. Plaintiff remains free to apply to proceed in forma pauperis in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), *overruling in part Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

Date: 1/8/2024

Karen L. Litkovitz
United States Magistrate Judge

\UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRACIE M. HUNTER,　　　　　　　　　　　　　Case No. 1:21-cv-544
　　Plaintiff,　　　　　　　　　　　　　　　　Hopkins, J.
　　　　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.
　vs.

HAMILTON COUNTY BOARD OF
COMMISIONERS, *et al.*,
　　Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).